I please the court to give the tithe of federal defenders on behalf of the appellant Mr. Redd. The court should reverse the convictions on all the counts because they were based on prosecutorial misconduct at argument, cumulative inflammatory evidence, conflicting burdens on mental state, and the surprise testimony of an admitted habitual liar. In any event, count one must be reversed because the statutory mental state charged is vague, creates an unconstitutional presumption, and lacks any evidence showing deliberate avoidance as instructed. This is the reasonable opportunity thing? Yes. Didn't the judge fix that in the instruction by adding on a deliberate avoidance? I don't think that changes the fact that it created an unpermissible presumption of finding predicate X and therefore the government is relieved of proving Y. It simply added one more fact. You know, if the instruction had just gone to the jury or if he had a reasonable opportunity to observe, I mean, I think he'd have a point. But the judge added on essentially an ostrich instruction, you know, that he had to put his head in the sand. I mean, that's about as close to intent as you can get. So, I mean, even if the statute's bad, I'm having a hard time seeing how it prejudiced your client in this case. Well, in this particular case, there's absolutely no evidence of deliberate avoidance. So that was certainly nothing that the government has been able to point out to in trial or on appeal that showed deliberate avoidance. Deliberate avoidance has to be something more than simply the opportunity to observe. That's a different issue, though, than whether the statute's vague. That's a sufficiency of the evidence issue. That's correct, Your Honor. And in the briefs, I tacked all of those elements on the 1591C, rolled them all in together, because I think they're all related, that if it's not unconstitutionally vague, then it creates an unconstitutional presumption. Why is it unconstitutionally vague as applied to your client here? The most important thing is that there was specific evidence in this case that So that's applied to analysis, correct? Yes. Yes, that in this particular I mean, the evidence was overwhelming that he had an opportunity to observe her for a substantial period of time. Depending on They lived together. Depending on what that means, Your Honor. I mean, if we know what What do you mean, what does that mean? It seems they had a reasonable opportunity to observe her. He had an extended opportunity, and he had different, you know, in different contexts. But I pointed out some of the problems with that analysis in the brief. It's like, what kinds of interactions are required? How long? I mean, it doesn't make a difference when you're trying to determine the age of someone who's 17 or 18 versus someone who's 20 or 40. What is a reasonable opportunity in situations like that? And here we have Portia was about 18 months at most away from majority. Now, what's a reasonable opportunity? I mean, I can't tell someone who's 17 or 18 necessarily just by looking at them or interacting with them. But it's easier to tell. Even if you live with them, Your Honor. Sleep with them. Your Honor, I know this isn't in the record, but I have to say, I've known my wife for 20 years, and I believe I know what her birthday is, and I've seen documents with her birthday on it. But I couldn't say 100% certain that I know that that's her birthday, because people look at her and think that she's younger than she says she is. Well, you've got that in the record forever now. And I'm now the hero at home. Counsel, can I? So it is possible to know someone for a very long time, more than the time that these two people knew each other, and not know for certain what the person's age is when they're confronted with confirmation of something of a different age. Can you help me with this point? Because I have a hard time listening to any of your arguments with respect to Count 1 because I get stuck on this. So tell me if I'm wrong on this. Okay. You might have the best arguments in the world as to why he didn't have a reasonable opportunity, whatever. But why don't we infer from the guilty verdict on Count 3 that the jury found that he actually did know her birth date, did know her actual birth date, assuming we reject your argument for why the count should have been severed. Well, I don't think there's any question that he knew what her birthday was. Before she went to juvenile hall, because that's what they had to. Yes. But knowing someone's birthday. No, no, no. No, he knew her age. Her actual age. He knew her age. Before she went to juvenile hall. No, there was no evidence of that. She told him. Did she testify that she told him at the very outset of the relationship? Correct, Your Honor. And that is the one piece of evidence, the surprise testimony of Portia saying that he knew. Let's say that we have to credit that testimony. You can argue that in a second. But I'm just saying. Okay. I'm trying to focus on why we don't need to get into any of these arguments with respect to Count 1. We assume that they believed her testimony when she told him at the outset that she was only 16 or 17. Your Honor, if it was permissible for the jury to ignore the massive evidence that contradicted that one surprise statement, and that they could totally credit that one statement, I have to agree. Well, yes. Why couldn't they? They could. They could do that. I don't believe they could, Your Honor. I don't think a rational jury can accept that. You know, you can believe. When somebody gets on the stand and you believe that they're lying, you can't. The trier of fact can accept part of their testimony, discredit part of their testimony, or accept all of their testimony, even if they're lying. That's true, Your Honor. That's what they're instructed. That's what the instruction tells them. That is what the instruction tells them, Your Honor. But they can't. They had a chance to observe her and to look at her and see how she testified. But, Your Honor, on sufficiency review, as this Court cited a couple of cases like this Rocha and Flyer, that that doesn't mean that the Court must give unreasonable, illogical weight to every single fact that falls in the government's favor. Like in the case in Flyer. Now, Flyer involved a finding whether the transmission had crossed state lines. And there was defense expert testimony saying that the way the computers were structured, there was no way that those transmissions crossed state lines. Now, to give it, if the jury was entitled to say, I don't believe that expert, he has no basis for that, we just don't like him, we're not going to listen to anything that he says, then there should have been no reason to reverse for the Rule 29 violation in Flyer. Because you can't give, because the Court found that there's just too much evidence, uncontradicted evidence, to show that any rational juror could reject that testimony, even though that was the maximally favorable interpretation. And the same thing in Rocha, where the Court said that the jury could not find that bare hands were a dangerous weapon, because that is contradictory to the statutory intent. Even though a jury could have said, yeah, he's a dangerous guy, and his fists were a weapon. Even though that was the maximally favorable interpretation that the Court could have given. But in both of those cases, the Court said Rule 29 should have been granted. There was a second fact in Flyer as well, where they said that the images that the defendant, the question of whether the defendant had knowing control, possession of the images, but there was testimony that the images only exist because he had deleted them. But the files only existed on unallocated space on the hard drive, which you need special programs for, which the defendant didn't have. But again, the jury could have said, we don't believe any of that. We believe the fact that they were deleted shows he knew about them. But the Court said it had to be reversed, because the evidence showing that he had no access to them was too great. Can I just want to be clear on what you're saying? I hear your argument on that. I can't say that I'm persuaded by it. So let's say that the panel doesn't agree with your sufficiency argument as to the victim's testimony. And we say that the jury could credit her, notwithstanding your passionate argument as to why she should have been disbelieved. And we also reject your severance argument. Do we then not need to reach any of your arguments as to Count 1 because of the guilty verdict on Count 3? Did I hear you say, yes, that's true? If it's not vague, if it doesn't create a Sandstrom problem. No, no, no. I'm saying we don't need to get into any of that because we know from the verdict on Count 3 that the jury found he had actual knowledge of her, the fact that she was under 18, at the relevant time. Okay. I will accept that. If you skip over all those other arguments that I've made and find them, yes, there's no argument on Count 1. Okay. But there are several arguments as to going to all of the counts. And the first one I want to address is the improper argument. Now, Sanchez, United States versus Sanchez, is directly on point with the improper argument in this case. In Sanchez, the court said you cannot argue to convict in order to vindicate a broader social purpose. And in Sanchez, the broader social purpose that the court pointed to was deterring phony duress defenses. Now, here the prosecution did the same thing. They said, don't follow these no-knowledge defenses. They're particularly dangerous in these cases. And then went on to say, because we have an epidemic of child prostitution in San Diego, and you must stop it. So is there anything at all significant about the fact that the evidence about San Diego being, you know, in the top ten or whatever it was, came in without objection? I don't believe there was an objection to it. It definitely wasn't. It came in twice, once during the prosecution's expert and once during the defense expert. Yes, Your Honor. So that evidence was there. But is that significant at all, in other words, the fact that it was in evidence, as opposed to a prosecutor just sort of picking an argument out of the air somewhere? No, I don't think so. I think in Sanchez the court was pointing to the cases that, I mean, just because there's certain evidence in the record doesn't mean you can misuse it. For any old purpose whatsoever. Yeah, that's exactly right. And there actually was, as I pointed out in another argument, there was a mass of evidence that came in here that really had no relevance to the issues in this case. But there couldn't be an objection every two minutes. So if we would agree that this was improper under Sanchez, is it harmless? It's not harmless whatsoever. I know. Because it wasn't harmless in Sanchez. Well, that's a little bit different case. Let's look at this case. It's a little bit different. But I think that all of these. Could we look at each of the counts? Could we look at, analyze each one separately? I don't think so, Your Honor. I mean, in count two, the government didn't have to prove age in count two. I don't think so. I think the way this case was structured and the way it was presented to the jury, that all of these were rolled in together. I mean, really counts two and three were parasitic on the pimping charge because. Well, they'd stand on their own, correct? You tell the jury every time each count is separate. You analyze each one separately. The government has a burden on each one. That's true, Your Honor. But I think when we're talking about inflammatory argument, argument that causes the jury to react in an emotional and fearful manner to a particular crime, that that's going to spill over into the other counts. I think if the jury was going to find that Mr. Red is an unrepentant pimp and that we're just going to have to stop the spreader of the epidemic, that they're not going to scruple against finding him guilty on the other two counts as well. I think the argument affects all of the accounts because it's based. And what is more, in addition to the reasons why it's not harmless in Sanchez, but in addition here is the fact that there was so much of this irrelevant, cumulative, inflammatory evidence portraying Mr. Red as a pimp. I'm quite happy with that title. You're talking about all the photographs that were edited. The photographs and the e-mails and the postings on MySpace and the captions to the photos that were put on there, all of them portraying him as a really unrepentant, proud-to-be-a-pimp. And certainly would prime the jury to want to punish this person for completely independent reasons of whether the evidence was strong enough to show that he knew her age before the time that she went into detention. Now, there was no dispute. The defense never disputed that Mr. Red was pimping Portia. They never disputed that he produced and distributed the images. It seemed like the whole thing was based on that he didn't know her age. He didn't, you know, he didn't know her age. And she got on the stand and got right out of the water. To everyone's surprise, Your Honor, to the judge, the prosecution, the defense, to everyone's surprise, Portia got on the stand and said something she had never said before and had quite the opposite of the number of things, the number of times she had said just the opposite. And she admitted, I mean, there couldn't be a more thoroughly impeached witness. I mean, she admitted to being a habitual liar. She admitted to having a motive, or the expert evidence showed that she had a motive to lie in order to continue to pimp as a minor, that part of her testimony was contradicted, and that she, let me just point to two specific facts, concrete facts, that just show that makes her testimony completely incredible. Is that if Mr. Red knew that she was a minor, there was expert testimony that pimping is all about the money. It is the money is the paramount thing. If that's true, why was there no indication on any of my Craig listings, Craig's listings, MySpace, website, indicating any kind of that she was a minor, or that the prices that were being charged were anyway commensurate with what would be charged for pimping a minor. There's no indication, and it's inconceivable that someone would knowingly run the risk of pimping a minor and not try to capitalize on that, maximize the profits that the expert testimony said that a minor can earn way more than an adult prostitute. Second thing is that if Mr. Red knew that she was a juvenile, why did he ask his friends to look in adult facilities to find out where she was being held? Because he knew that she lied all the time about her age, and presumably she lied to the police when she was arrested, right? But that doesn't fit with the fact that he didn't even ask them to look in the juvenile facility, because if he suspected she was... Because he knew her well, he knew her quite well, and she lied all the time about her age to everybody except him. That may be an inference one could make, but there was no evidence. I'm just saying the jury heard her testify. You're asking us to look at a cold record, look at her explanation for why she was coming forward for the first time, and say nobody could believe that person. We didn't see her. The jury got a chance to watch her, and obviously everyone on your side of the case was shocked when she said what she did, but she gave an explanation, and the jury found it credible. Your Honor, I don't think that, as I said, when we're talking about the sufficiency... Answer, Judge. That doesn't mean that the jury can draw an unreasonable or irrational or illogical credibility finding. I'll give you a minute for rebuttal. Thank you, Your Honor. We'll hear from the government now. Good morning, Your Honor. May it please the Court. Alice Andrews-Tron on behalf of the United States. In this case, Section 1591C was not unconstitutionally vague and does not violate due process for the reasons that I think the panel is well aware. We have the benefit now of the Robinson case out of the Second Circuit, which I file a 28J letter, which basically went one step further than what we did here in this case. In Robinson, the appellate court found that a person can violate the statute if they knew, were in reckless disregard, or had a reasonable opportunity to observe the person being prostituted. In this case, as Judge Connelly noted, we tried to merge the reckless disregard in conjunction with the reasonable opportunity to observe, just as the Wilson Court, the district court in Florida, did. For all of those reasons, we believe that 1591C is not unconstitutionally vague and does not violate due process, nor does it unconstitutionally lower the government's burden, because as we argued in our briefs, in this brief as well as to the district court, it just substitutes one fact for another. We need to show that. Roberts. So how come you didn't argue the point that I was engaging in colloquially with defense counsel about? Is there something wrong with, I'm worried because you haven't made an obvious argument that seems to me to dispose of all of these arguments as to count one. They found him guilty on count three. I'm wondering if you can tell me that that required actual knowledge before the date that she went into juvenile hall. Why doesn't that just dispose of all of this as to count one? Do you want the honest answer? I didn't think of it. Credibility, wasn't it? I think it's a great argument. I think it's a great argument, and you're absolutely right. And that is what the jury instruction said, that the jury had, if they convicted on count three, which was the distribution, he had to know that she was a minor at the time that he distributed the images, which was about three weeks before she went into juvenile hall. So you're absolutely right. Okay. I just want to make sure, as an officer of the court, there's not something I'm overlooking. Wouldn't you still have to consider that, though, in evaluating the claim that there was improper prosecutorial conduct? I'm sorry, Your Honor. So he has the other argument. The other main argument they have is that during closing argument, the – That was me. I said it. Yes. You made those statements about the epidemic in San Diego with child prostitution or child trafficking. Well, as your – But to fully evaluate – I mean, under Sanchez, one could make a reasonably good argument that what you did was prohibited by Sanchez. And the question is whether or not there's harmless error. I think there are two – there's a reason, or we can distinguish this case, what I argued in closing argument with what happened in Sanchez. Sanchez, this Court, made it very clear that the jury and the prosecutor could not ask the jury to look things beyond the record. In this case, as the Court has noted, the testimony about San Diego being the eighth worst city in the United States for child prostitution was in the record. But that's not why it came in. It didn't come in for the purpose that you argued it for in closing argument. It came in as sort of background qualifications of the witness in question. Yes, sir. That's why the law was in place. I even prefaced it by saying that the law is in place because this is an epidemic. But I didn't – So you – Go ahead, sir. There was testimony that that's why Congress adopted the statute? No, there was not. No, there was not. Was there any evidence that there was an epidemic in San Diego? Other than the fact that it's the eighth worst city in the United States. That's it? That was it. But given that one line in conjunction with the entire testimony, all of the evidence, all of the government's witnesses, all of the defense witnesses, and the entire closing argument were talking about two sentences. And even if they were improper, again, it doesn't materially affect the conduct of the entire trial. Number one, that comment only had to do with count one. If Your Honors read the record, I broke up the argument where I argued why there was evidence for count one, count two, and then count three. This was limited to two. Well, you know, in Sanchez, what tipped the panel in Sanchez was that – was the they found that the outcome really turned on the credibility of the witnesses. So here she wasn't – you know, one could say, I mean, she really wasn't all that credible, but. Well, the defense chose to call her. Right. I understand that. The defense chose to call her and put her on the stand. And knowing her background, they put her on the stand. And she had a moment of thought that, wow, this is really serious. Well, I guess – so my point was – earlier point was that under count one, you had to – you proved – your burden was to prove reasonable opportunity to observe. Knowledge or reckless disregard. Right. Yes. And, you know, there's pretty strong evidence that he, in fact, had such an opportunity. Absolutely. They lived together for nine months. And on count two, you didn't have to prove age wasn't a factor. Age was – for him, it was an affirmative defense. Correct? Correct. So only on count three does it really become – this is before he gets into – before she's into juvenile hall, correct? He sent the email. I believe it was March 4th, 2010, and she was arrested and taken to juvenile hall March 23rd, 2010. Right. Yes. So a little bit – isn't it a little bit closer on count three? Closer with regard to – To the evidence – the evidence that was presented. It was our position, and we argued that he knew all along. Right. By all the indicators and red flags that he – that he knew. That he knew her name wasn't Erica Tua. He knew her birth date wasn't January 14th, because based on the medical records, the fact that they had sought medical treatment. At some point in time, that reckless disregard of those red flags would probably put someone on notice that, hey, maybe this girl isn't who she – who she says she is. And, again, as the surprise testimony from the defense witness, the victim in this case said, yeah, he absolutely knew. So I don't think it's a close call at all that there was absolute sufficient evidence to show that he did know. He did. A summer of 2009 before all of this – all of the offenses occurred. Can I ask you, how did the sentence break down across the three counts? The judge sentenced to count on count one, I believe it was 15 years, which was concurrent to count two, which was the minimum mandatory, 15 years. And I think he did 10 years on count three, all to run concurrent. So for a total of 15 years. So even if this Court reverses on count one, which I do not believe you should, there's no issue. Actually, count three was 180 months, too. It was. Okay. We've got 15 concurrent, 15 months across all three counts. Correct. I'm sorry, Your Honor. No, never mind. I think I addressed the 1591C, the burden shifting, the severing of counts. Counsel is asking the trial court to read the tea leaves. They never asked for severance. And somehow all of the other arguments that he made somehow was supposed to signal to a district court that he wanted severance. I think I addressed that in my briefing. What about the cumulative evidence issue? The reason why I broke that down in my brief, that essentially what they're complaining of is about 5 percent of the total exhibits. As I broke down in my brief, about 68 percent of the exhibits came in with no objection. No objection. Zero objection. The 27 percent, the next, I think it was 53 exhibits, came over, some object, came in over some objection, but not the objection of 403 or unfairly prejudicial or anything like that. Basically, it boils down to 5 percent of the exhibits, which I believe was total of nine. And the record is very clear that Judge Whalen did a thorough balancing and figuring out, okay, Mr. Honor, you want all of these exhibits in? You're not going to get all these in. You're going to get this one in or this one in, and that's it. And he did evaluate each piece of evidence. So at the end of the day, it was our burden to prove each and every element of the offense, and we believe that we had to bring in that evidence for that purpose. No, I looked at the nine that you eventually pared it down to in your brief, and none of them were photographs. They were all, I don't know if they were MySpace posts or texts or whatever. They looked to me like maybe e-mails, but that's, they were all text-based. And, I mean, so is that, you're really saying that those are the only nine that the defense objected to on 403 grounds? Those seem like the least inflammatory of the other stuff that came in. Well, the record is very clear as to what was objected to and the basis of the objections. The text messages I think Your Honor is talking about are the, it wasn't text messages, it was comments on MySpace talking about how she's going to get out of juvenile hall, my sexy go-getter. Again, to play into the theory of the government, that it was going to be business as usual. As soon as she got out of juvenile hall, that website was live and she was going to continue to work as a prostitute for the defendant. It was business as usual. And so we brought in all of those MySpace comments for that purpose. So I don't think there was an overwhelming mountain of evidence, as counsel argues in his brief, that was so inflammatory. It boils down to about nine exhibits and the district court did not abuse his discretion by allowing those in. He certainly kept many out. Unless the court has any questions, I'm prepared to submit on the record. I don't see any more questions. Thank you. Thank you, sir. Thank you, Your Honors. I just want to make three brief points. I want to, as far as count three, there was an additional argument in the brief, which we didn't get time to talk about, that there was a perfect storm of confusion here with having one historical fact, knowledge of age, being looked at by the jury from three very different burdens of proof. Now, that's going to create enormous problems for a jury trying to sort this out. And, of course, the risk, the danger is that they will go with the most prosecution-favorable burden and just make a one-time-for-all decision. It's just like, okay, well, if he didn't prove by clear and convincing evidence that he didn't know, then that's it. We're done. And we'll just apply that to all counts. That's the problem here, is that, and why, for the argument, it doesn't matter that the government technically was only making the improper argument as to count one because their desire to convict on all three counts and their ability to keep them straight wasn't exactly clear. The government says it was only 5%. I had this view that that's the case. There was quite a few objections there. But even 5% of highly prejudicial inflammatory information is enough to sway it. Those nine were not that inflammatory. Are you saying that there were others besides those nine that you object, or that defense counsel objected to on four or three counts? Your Honor, I think the reality of this is that you could have objected to every single one, and that it's true that counsel didn't. They pick and choose which ones when they're bringing it up. The judge did exclude some of them, recognizing sua sponte, that this is just too much. Come on, please, just pick one. But the judge just didn't go far enough because these were way overkill, and all they did was portray Mr. Redd as an unrepentant pimp on facts that were just not disputed, that he was a pimp, that he knew Portia for a while, and they had an intimate relationship. Thank you, Your Honor. Thank you, Mr. Pipe. Thank you, counsel. We appreciate your arguments. The matter of the United States v. Redd is submitted, and have a safe trip back to San Diego if you're going back today.
judges: Kennelly, Paez, Watford